IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 25, 2020

## JOSE ALVARADO v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2014-C-2531     Steve R. Dozier, Judge**
_____

**No. M2019-01261-CCA-R3-PC**
_____

The Petitioner, Jose Alvarado, appeals from the Davidson County Criminal Court's denial of post-conviction relief from his conviction for aggravated sexual battery. On appeal, the Petitioner argues that his trial counsel provided ineffective assistance in failing to call certain witnesses and present certain evidence and that trial counsel's actions deprived him of his right to testify at trial. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

Manuel B. Russ, Nashville, Tennessee, for the Petitioner, Jose Alvarado.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Glenn Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Davidson County grand jury indicted the Petitioner for one count of rape of a child, and following a jury trial, convicted him of one count of aggravated sexual battery. State v. Jose Alvarado, No. M2016-00378-CCA-R3-CD, 2017 WL 2791181, at *1 (Tenn. Crim. App. June 27, 2017), perm. app. denied (Tenn. Oct. 4, 2017).

The evidence presented at the Petitioner's trial showed that the Petitioner attended the same church as the minor victim, and, during an all-night church service, the Petitioner asked the victim to help him carry leftover food to his car during a break in the service.

Alvarado, 2017 WL 2791181, at *1. The victim testified that the Petitioner told him to get in the Petitioner's car and made him crawl into the backseat. Id. The Petitioner followed the victim into the car, locked the door, and told the victim to take off his clothes. Id. The victim stated that the Petitioner took off his own clothes, told the victim "to turn around and to like bend over[,]" and put his penis in the victim's anus. Id. at *2. The victim said that he felt a "horrible pain[,]" and after the Petitioner took his penis out and cleaned himself and the victim off, he let the victim go and told him not to "tell anybody." Id. The victim stated that he did not tell anyone what happened initially because he "felt scared[;]" however, several months later, the victim's mother walked in on him trying to "do what happened to [him] to [his brother]." Id. The victim's mother asked him if someone had done something to him, and, after mentioning several names, the victim told his mother that the Petitioner had done something to him. Id. The victim's mother testified and confirmed that she had known the Petitioner for more than fifteen years. Id. at *5. She stated that the victim's behavior had changed regarding attending church about six months before he told her what happened with the Petitioner. Id. at *6. The victim's father testified that he "placed a telephone call to the Petitioner that was recorded for the police" about the incident with the victim. Id. The victim's father stated, "At the end of the call, after making so many questions for him to tell me, he told me that, yes . . . he had done it and that if that would make me feel better, he accepted that he did that." Id. The victim recounted the incident to a child abuse pediatrician and a forensic interviewer. Id. at *8. The Petitioner called an officer who interviewed the victim, and he testified that the victim told him that the Petitioner "began trying to kiss [the victim] on the mouth and [the victim] struggled to stop him based on [the victim's] statements." Id. at *9.

Following deliberations, the jury convicted the Petitioner of the lesser-included offense of aggravated sexual battery and sentenced him to eleven years' imprisonment. Id. at *11. At the Petitioner's sentencing hearing, the victim testified about other times when the Petitioner touched him inappropriately. Id. at *10. Several of the Petitioner's friends testified on his behalf at the sentencing hearing, explaining his work ethic and his positive reputation in the community. Id. at *11. This Court affirmed the Petitioner's conviction on direct appeal, and the Tennessee Supreme Court denied permission to appeal. Id. at *1, *22.

On August 20, 2018, the Petitioner filed a timely pro se petition for post-conviction relief, alleging several instances ineffective assistance of counsel. The Petitioner was appointed counsel, who filed an amended petition for post-conviction relief on January 29, 2019, alleging, inter alia, the same claims raised in the appeal. The post-conviction court held a bifurcated hearing on the petition on February 22, 2019, and May 24, 2019.[1]

---

[1] Although post-conviction counsel stated that he was going to call witnesses at the second setting, no witnesses were called and no evidence was presented.

The Petitioner, who testified through a translator based on his limited proficiency in speaking and understanding English, testified[2] that he never had a clear understanding of what was supposed to happen at his trial. He said that he understood the accusations against him and the evidence that was presented against him at trial, but he did not understand the procedural aspects of the trial and was surprised by some of the evidence presented against him. The Petitioner explained that he did not know that he would have the right to question the State's witnesses, and he did not know that he had a right to testify based on what trial counsel told him. He also said that trial counsel did not tell him what her trial strategy was and only met with him three times prior to trial.

The Petitioner said that he was aware that he could have testified at his trial, but trial counsel told him that she thought that he should not testify. He explained that, when trial counsel met with him pre-trial, she told him "[d]on't worry about testifying" based on "what was found." He then said that he told trial counsel that he wanted to testify, but she told him that he could not, without providing an explanation. He said that trial counsel told him that it was not "convenient" for him to testify and that "it wasn't best for [him] to testify because she could do it better." He stated, "[Trial counsel] was inclining more that she was going to be the one to speak." He explained that trial counsel thought he would be a bad witness because he was nervous and would not be able to "speak well." He stated that trial counsel discussed with him that the victim's statement contained other allegations of sexual abuse.

The Petitioner stated that he brought up the fact that he wanted to testify during his trial "when they started mentioning about what [trial counsel] said the State wasn't going to present and they started presenting it." When the Petitioner told trial counsel that he wanted to speak, "she wrote on a sheet of paper, you can't speak." He clarified that this occurred during the middle of his trial. He explained to the post-conviction court that she simply wrote "No." He did not have the opportunity to address this again with trial counsel during his trial. He explained that, when trial counsel told him that he could not speak, he understood this to mean that he "couldn't get up and speak, right, in the middle of the trial[,]" but when asked if he still knew that he would have an opportunity to testify later in the trial, he said he did not. The Petitioner was not sure if he participated in a Momon[3] hearing during his trial, although he stated that he did not believe that he would have told trial counsel or the trial court that he did not want to testify because "[he] always wanted to testify, [he] always wanted to speak." He stated that he had never previously been in an American court or charged with a "serious offense." He said that he was not comfortable with the trial process, and he described it as "unjust."

---

[2] We will limit our recitation to the facts surrounding the issues raised on appeal.

[3] See Momon v. State, 18 S.W.3d 152, 155 (Tenn. 1999).

The Petitioner explained that, if he had testified at his trial, he would have said "everything was false[,]" and he would have explained the layout of his church where the incident occurred and that he had witnesses who would have testified in his favor. The Petitioner remembered talking to the victim's father on the phone, but he explained that his statements were taken out of context and he would have been able to explain this to the jury if he had testified. The Petitioner also testified that he worked as a driver for a company called Tate Ornamental in 2012 and 2013. He stated that he was out of town for work from January through July 2013, although he attended some of the vigils at his church during that time. The Petitioner identified his employment records from Tate Ornamental, and these were made an exhibit to the hearing. He agreed that the indictment specified a date range of "basically any time in 2013[;]" however, he stated that he was working out of town for a "good portion of 2013." He testified that he told trial counsel about this employment, but he did not know if trial counsel did any investigation or obtained his employment records. He believed that this would have been a "good bit of evidence in [his] favor." He explained that the indictment specified January 2013,[4] and he was working in Baltimore, Maryland during that time.

The Petitioner stated that he presented trial counsel with the information of multiple witnesses that he wanted to call on his behalf at trial. He was unaware of whether trial counsel or the investigator spoke with any of these individuals. He believed that these individuals would have testified that the incident never happened. He explained that trial counsel told him that she attempted to talk to these individuals, but he was unsure if she was successful. He acknowledged that trial counsel subpoenaed some of these individuals to his sentencing hearing. He said that trial counsel "told [him] not to worry because [trial counsel] had her witnesses she was going to bring." However, he did not know who these witnesses were, and he did not think that they knew him. The Petitioner explained that he did not know that the sentencing hearing was a separate proceeding from the trial, and he believed that the jury would hear from his witnesses at the sentencing hearing.

On cross-examination, the Petitioner testified that he was from El Salvador, he came to the United States in 2000, and he knew some English. He explained that trial counsel was not able to communicate with him in Spanish. He agreed that he had conversations with trial counsel about his right to testify and his right to remain silent prior to trial, and he said that trial counsel told him that "it was better that she do the talking and that [he didn't talk]." He said, "When [trial counsel] visited me in jail, she told me that I shouldn't [testify]. But when I was here [at trial], she said I couldn't [testify]." He said that he remembered "raising [his] hand" in front of the trial court, but he did not remember any questions that were asked of him. He agreed that he would have told the truth to the trial

_____

[4] We note that the indictment states that the incident occurred "on or about a date between January 1, 2013 and December 31, 2013."

court, and he would have told the trial court if he did not understand something. The Petitioner stated that he got along with trial counsel, and her associates "spent time explaining [his] case to [him]."

The Petitioner explained that his church held vigils at the end of every month, but he stated that he did not attend all of the vigils in the fall of 2013 because he was working out of town. He agreed that the victim was at some of these vigils as well. He stated that, if he had testified, he would not have said that the church services did not occur but would have said that he did not do what the State alleged against him. The Petitioner said that he spent a lot of time with the witnesses that he wanted trial counsel to call in his favor and that they would have said that he did not do what the State was alleging. He said that he was with these individuals for "every minute" of the all night vigils. Of one of the witnesses, the Petitioner said, "If I were to leave, he would also leave." The Petitioner agreed that he discussed another allegation of sexual abuse between he and the victim with his trial counsel. However, he could not remember if trial counsel told him that "depending on how [his] testimony went, it was possible the State could have asked [him] about this other sexual alleged [sic] conduct." The Petitioner agreed that trial counsel told him that he could not speak while he was sitting at the defense table during other witnesses' testimony. He said that he understood the difference between speaking when other witnesses were testifying and testifying under oath, but he said that he did not understand this at the time of his trial. The Petitioner stated that he wanted to explain to the jury the contents of his phone call with the victim's father. The Petitioner agreed with the trial court that he was no longer employed with Tate Ornamental in October of 2013, but he insisted that "nothing has happened" with the victim.

On redirect examination, the Petitioner stated that he did not understand "complicated legal issues in English." He said that he thought he would have another opportunity to talk to the jury after trial counsel told him he could not speak, but he did not bring it up with trial counsel again. He did not believe that he could tell the trial court that he wanted to testify because of what trial counsel told him. He stated that the witnesses he wanted trial counsel to call would have been able to testify about the size of his church. He also said that his church had a small congregation, so someone would have noticed if he was absent. He explained that he would have told the jury that he never admitted to committing any offense against the victim when he spoke to the victim's father.

Trial counsel testified that she had worked at the Nashville Public Defender's Office for ten years, which made up her entire legal career. At the time of the hearing, she was serving as the training director for the office, which included "continuing training and initial training of all staff that work in the office." Her previous duties included serving as a team leader for the office for several years. Trial counsel said that she had been involved in approximately twenty jury trials until that time, the majority of which involved felony

- 5 -

charges. She said that the Petitioner's trial was the first she conducted involving an allegation of child sexual abuse. Trial counsel was appointed to the Petitioner's case on the day of his arraignment, and she explained that she met with the Petitioner several times and discussed discovery and trial strategy with him. She stated that she primarily communicated with the Petitioner through another member of her office because she could not speak Spanish. She could not recall any substantial breakdowns in communication with the Petitioner, but she stated that she would have tried to address the issue had it come up. However, she said, "But I do recall wondering if [the Petitioner] had either some cultural competency issues or some intellectual disability or something like that." Despite this feeling, she did not say anything about it or request a mental evaluation. She believed that the Petitioner generally understood the substance of their conversations, although it often took "having to ask essentially the same question in several different ways before getting to sort of the heart of what . . . he was trying to ask." She said that she would have explained to the Petitioner what he was charged with, any possible punishment, and plea offers from the State. Trial counsel said that the Petitioner "maintained his innocence throughout."

Although she could not recall specifically, trial counsel said that she talked to her clients about "both a right to testify, that [she] cannot tell them to testify or not to testify and to talk through the risks and benefits of making that choice." She said that she had "that conversation on at least one occasion before the [Petitioner's] trial began[,]" but she did not remember "continuing conversations throughout the course of the trial." Trial counsel acknowledged that she "may well have written [the Petitioner] a note if [she] thought his question was: Can I speak at this time." She said that she possibly misunderstood his question, but she would "never have told him no" about testifying on his own behalf, although she "may have counseled him that it might be problematic." She told the post-conviction court that she believed that she had more discussions with the Petitioner about him testifying during his trial. She believed that the trial court conducted a <u>Momon</u> hearing and the Petitioner decided that he did not want to testify. Trial counsel said that, if she had been aware that the Petitioner was having trouble understanding, she would have requested additional time to discuss this with the Petitioner and, ultimately, not gone forward with the <u>Momon</u> hearing if the Petitioner still had not made a decision.

Trial counsel said that she discussed the victim's statement with the Petitioner pre-trial, and she was aware that the State had alleged another instance of felony sexual abuse between the Petitioner and the victim. She presumed that she would have discussed these allegations with the Petitioner, specifically in the context of the "risks an[d] benefits" of him testifying. She said that she would have been concerned about his testimony "opening the door" to other portions of the victim's statement coming into evidence, and she said that she would have given the Petitioner her opinion about him testifying. Trial counsel said that the Petitioner did not "push back" on "much of anything," and she believed that

the Petitioner may have felt like he could not testify because of trial counsel's advice and opinions on the situation. She said that she was concerned that the jury would not have believed the Petitioner if he had testified, and she felt that the jury would have felt compelled to pick between him and the victim.

Trial counsel said that her team members interviewed three to four witnesses that she was able to locate, but she ultimately decided not to call any of them at the Petitioner's trial. She said that, because there was "such a broad range of dates" in the indictment, she was unable to "locate anyone who could have provided an effective alibi because it's really difficult to alibi a year." She said that she was not aware of the size of the Petitioner's church until that day, and she did not know how "impactful" the size of the Petitioner's congregation would have been on his trial.

On cross-examination, trial counsel said that she could not be certain whether the Petitioner was "really [t]aking in" what she told him about the trial process. She remembered talking to the Petitioner about the witnesses that he wanted to testify on his behalf and that he wanted them to support his innocence. Nevertheless, she said that she "struggled to find witnesses who would [say] what he had hoped they would say," but she "ultimately made the decision that the witnesses [they] had been able to locate and had talked to would present almost exclusively character evidence and not any sort of facts, alibi type of evidence." Trial counsel said that her team members may have "probed" the witnesses that they interviewed about specific information, but she said that she did not know if they went "far enough" in asking about date specific information. Trial counsel said that the Petitioner was adamant about certain things, such as his innocence, but when she had certain conversations with the Petitioner, including telling him that the witnesses were "not going to say what [he thought] they [were][,]" the Petitioner would "stop pushing back at that point." She said that the witnesses would have confirmed the Petitioner's "good and lawful conduct up to that point [and] that he was a reputable person," and she agreed that their testimony would have been "consistent with [their] theory."

Trial counsel agreed that the Petitioner could have had trouble overcoming some of the cultural issues throughout the trial process, including his right to testify. She said that she did not have a specific memory of the Petitioner passing her a note during trial, but she acknowledged that she and her team often passed notes to each other during trial. She agreed that it was possible that the Petitioner believed that her writing "No" at that point "foreclosed any further conversations" on him testifying. On July 15, 2019, the post-conviction court denied relief by written order. It is from this order that the Petitioner timely appeals.

## ANALYSIS

On appeal, the Petitioner contends that trial counsel was ineffective in failing to investigate and present witnesses and evidence in his favor and that trial counsel's actions deprived him of the right to testify on his own behalf at trial. The State responds that the Petitioner failed to prove by clear and convincing evidence that "[trial counsel's] representation was deficient or that any alleged deficiencies prejudiced [the Petitioner's] case."

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

"In evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

**I. Failure to Call Witnesses and Present Evidence.** The Petitioner alleges that trial counsel was ineffective for failing to present witnesses and evidence in his favor. He asserts that trial counsel was provided the information of multiple witnesses and proof of his employment out of the state during a large portion of the indictment, which would have established an alibi. The Petitioner acknowledges the importance of presenting these witnesses at the post-conviction hearing; nevertheless, he asserts that his testimony sufficiently "establish[ed] the contents" of the witnesses' testimony. He contends that trial counsel's decision not to present these witnesses, who "would have offered [the Petitioner] at least a partial alibi, rebutted the testimony of the alleged victim, provided practical information about the location of the alleged incident, and, had he testified, corroborated his own testimony," and not to introduce the Petitioner's work records from that time, were not tactical decisions made by trial counsel. The Petitioner also asserts that these decisions prejudiced him because, had the jury heard this evidence, it would have been unable to find him guilty. The State responds that the "indictment did not specify an exact date, and neither the witnesses nor the [P]etitioner's employment history, provided a solid alibi defense." Additionally, the State asserts that the Petitioner failed to present these witnesses at the post-conviction hearing, and, as such, cannot establish prejudice. We agree with the State.

The post-conviction court held as follows in denying the petition for post-conviction relief:

> The Court accredits the testimony of trial counsel in this matter and finds that the Petitioner has failed to show that his trial counsel's performance was

deficient or that trial counsel's performance caused him to suffer prejudice at trial.

Here, trial counsel met with the Petitioner numerous times prior to trial. The Petitioner and his trial counsel discussed the nature of the charges, discovery material, and trial strategy. Trial counsel used a private investigator to aid in their defense and used her experience in trial strategy decisions about calling witnesses and presenting proof. Although the Petitioner asserts additional witnesses should have been called to testify at the trial, the witnesses were neither called at the post-conviction hearing nor was there proof presented at the hearing to substantiate the witnesses' necessity for a fair trial. Also, the employment records that were introduced by the Petitioner do not cover the time frames of the indictment which was only one (1) count.

The evidence does not preponderate against the findings of the post-conviction court as it relates to this issue. Trial counsel testified that she interviewed the proposed witnesses, but, because of the "broad range of dates" in the indictment, she did not believe that they could provide a solid alibi, and she made a tactical decision not to call these witnesses at trial. Additionally, despite his contentions to the contrary, the Petitioner failed to present these witnesses at the post-conviction hearing and, as such, has not shown what testimony these witnesses would have been able to provide. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Although the Petitioner introduced his records showing that he was employed by Tate Ornamental from 2012 to 2013, the indictment covered all of 2013, and the Petitioner admitted that he attended some of the vigils during this time period. Accordingly, he has failed to show how counsel was deficient in failing to present these records and how he was prejudiced by this decision. He is not entitled to relief.

**II. Denial of Right to Testify.** The Petitioner also alleges that his decision not to testify was not made knowingly and "was without a full understanding of the mechanics of a jury trial." He maintains that he informed trial counsel multiple times that he wished to testify but that she advised against it. He states that he could not "fully recall the [trial court's] inquiry into his right to testify," but he did not believe that he had the right to "demand that he testify." He contends that the failure to allow him to testify and to "present such evidence" constitutes prejudice. He continues, "As it relates to the conduct of his trial counsel, [she] was ineffective in relation to [the Petitioner's] waiver of his right to testify at trial." He asserts that, "[t]he Momon hearing notwithstanding," trial counsel did not ensure that he understood his right to testify. The State responds that the Petitioner "failed to prove by clear and convincing evidence that trial counsel deprived him of his right to testify." The State asserts, "The trial court credited the testimony of trial counsel that although she encouraged him not to testify, 'it was ultimately his decision,' as was determined by the court through a Momon hearing." We agree with the State.

The post-conviction court held as follows on this issue:

Trial counsel encouraged the Petitioner not to testify and it was ultimately his decision whether to testify or not. Additionally, the Court conducted a [Momon] hearing and the Petitioner understood the Court's inquiry.

Finally, the Court gives little weight to the Petitioner's claim that he did not understand his trial counsel prior to trial or that his head phones malfunctioned during the trial. A Spanish speaking attorney or investigator accompanied [trial counsel] during trial preparations and the Petitioner never informed her that he did not understand their discussions.

It appears that the Petitioner intends to raise a free-standing constitutional claim that trial counsel denied him of his fundamental right to testify as "guaranteed both by Article 1, section 9 of the Tennessee Constitution and by the Fifth and Fourteenth Amendments to the United States Constitution." Momon, 18 S.W.3d at 155.

A criminal defendant has a constitutional right to testify at trial. Momon, 18 S.W.3d at 157. Because the right to testify at one's own trial is a fundamental right, this right must be personally waived by the defendant. Id. at 161. In order to ensure that the defendant has made a knowing, voluntary, and intelligent waiver of the right to testify, defense counsel must show at a hearing on the record and prior to the conclusion of the proof but outside the presence of the jury, that the defendant knows and understands:

(1) the defendant has the right not to testify, and if the defendant does not testify, then the jury (or court) may not draw any inferences from the defendant's failure to testify;

(2) the defendant has the right to testify and that if the defendant wishes to exercise that right, no one can prevent the defendant from testifying;

(3) the defendant has consulted with his or her counsel in making the decision whether or not to testify; that the defendant has been advised of the advantages and disadvantages of testifying; and that the defendant has voluntarily and personally waived the right to testify.

Id. The Tennessee Supreme Court subsequently clarified that a defendant may waive his or her right to testify either by engaging in the voir dire procedure outlined above or by signing a written waiver of the right to testify. Momon, 18 S.W.3d 152 (Tenn. 1999), opinion on petition to rehear, 18 S.W.3d at 175 (comparing Tenn. R. Crim. P. 23,

which permits a written waiver of the right to a jury trial, and <u>State v. Muse</u>, 967 S.W.2d 764, 768 (Tenn. 1998), which held that the right to be present during the voir dire of the jury may be personally waived by the defendant in writing or on-the-record in open court). The court held that the written waiver of the right to testify should not be executed before the close of the State's case-in-chief and must establish that the defendant knew and understood the aforementioned items (1)-(3). <u>Id.</u>

Although the post-conviction record does not contain a transcript of the <u>Momon</u> hearing or a signed written waiver of the Petitioner's right to testify, the post-conviction court stated that the trial court conducted a <u>Momon</u> hearing and found that the Petitioner understood the trial court's inquiry. This Court may take judicial notice of the appellate record on direct appeal. The transcript from the Petitioner's trial notes that the trial court held a <u>Momon</u> hearing, and the Petitioner waived his right to testify. The post-conviction court also gave "very little weight" to the Petitioner's contention that he did not understand trial counsel. The post-conviction court acknowledged that trial counsel encouraged the Petitioner not to testify but also found that this was ultimately the Petitioner's decision. The evidence presented at the post-conviction hearing does not preponderate against this finding by the post-conviction court. As far as the Petitioner's assertion of this issue within the context of his claim of ineffective assistance of counsel, we conclude that he has failed to show that counsel's performance as to this issue was deficient or prejudicial. As such, the Petitioner is not entitled to relief on this claim.

## <u>CONCLUSION</u>

Based on the above authority and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. MCMULLEN, JUDGE

- 12 -